[Civ. No. 58794. Second Dist., Div. Five. Mar. 9, 1981.]

SAFECO TITLE INSURANCE COMPANY,
Plaintiff and Respondent, v.
PARIS MOSKOPOULOS, Defendant and Appellant.

660

COUNSEL

Gerald Lipsky and Richard Pech for Defendant and Appellant.

Tyre & Kamins and Richard J. Kamins for Plaintiff and Respondent.

OPINION

**OLDER, J.**\*—Appellant Paris Moskopoulos appeals from a declaratory judgment determining that respondent Safeco Title Insurance Company (Safeco) has no duty to provide a defense to appellant in an action against him, described hereafter, and awarding to Safeco attorneys' fees, costs, expenses and interest in the amount of $14,294.45.

Appellant is a licensed real estate broker and has been engaged in the real estate business for many years. He has been involved in escrow transactions and is familiar with title insurance policies. In 1974 Bea Williams (Bea), a licensed real estate agent, sold certain property located on Mulholland Drive, Los Angeles, to Billy Paul and Blanche Williams (the Williamses), who resided in Philadelphia and rented the property to others after they purchased it. The Williamses were friends of but not related to Bea. The Mulholland property was improved with a four-bedroom home overlooking the San Fernando Valley.

In late 1977 or early 1978 Bea, then an employee of appellant's company, Paris Realty Company, learned that the note secured by a first deed of trust on the Mulholland property was in default and the lender had recorded a notice of default. Bea informed the Williamses of the default and was told by them that an attorney was handling the

---

\*Assigned by the Chairperson of the Judicial Council.

matter. In February 1978 Bea learned that a foreclosure sale was noticed for March 9, 1978,[1] and notified appellant of the proposed sale.

On February 16 appellant made a written offer to the Williamses to purchase the Mulholland property for $110,000, all cash, with a $5,000 deposit. On February 17 Blanche Williams told appellant on the telephone that the Williamses would accept the offer and would send a confirming telegram. Appellant never received a confirming telegram or any other form of written acceptance of his offer. Appellant believed that real estate purchase agreements were required to be in writing. Both appellant and Bea tried repeatedly and unsuccessfully to obtain a written acceptance from the Williamses.

On February 17 appellant attempted to open an escrow for the purchase of the property and tendered a $5,000 deposit. The escrow company declined to accept the deposit and open an escrow without written escrow instructions signed by the sellers. Between February 18 and February 27 appellant negotiated with the Williamses through their attorney with regard to the amount of the deposit in escrow the sellers would require. On February 23 appellant received a counteroffer from the Williamses providing for a deposit of $40,000 in escrow. Appellant testified he could have accepted this counteroffer, but as a matter of principle refused to do so.

On February 27 appellant received a telegram from the Williamses revoking the counteroffer. On February 28 appellant, through his attorney, filed an action in the Superior Court, Los Angeles County, for specific performance against the Williamses and recorded a lis pendens with respect to the Mulholland property. On the same date appellant notified the Williamses by mailgram that he had filed an action against them and recorded a lis pendens, and that any agreement by them to sell the Mulholland property to a third party would result in "vigorous and appropriate legal action."

The trial court found that appellant filed the action against the Williamses and recorded the lis pendens for the specific purpose of securing the purchase of the property; that appellant was aware that the foreclosure sale was still set for March 9, and that the lis pendens would in all likelihood prevent the Williamses from selling the property to anyone else or obtaining refinancing prior to the date of the fore-

---

[1]All of the events occurred in 1978 unless otherwise noted.

closure sale; and that appellant's actions were intentional and deliberate and not the result of mistake or inadvertence.

Thereafter, further negotiations ensued between appellant and the Williamses through their attorneys, and a settlement of appellant's action was reached calling for appellant to purchase the property for $117,500 with a deposit of $10,000. Escrow closed on March 9 and the Williamses conveyed the property to appellant. On the same date Safeco issued its policy of title insurance, effective March 9, insuring appellant's title to the Mulholland property. Appellant was unaware that Safeco was in any way involved until after the escrow closed.

Appellant dismissed his action against the Williamses on July 24. On July 25, the Williamses and one Martin Klass filed an action (the Klass action) in the Superior Court, Los Angeles County, against appellant. The complaint alleges six causes of action: interference with contractual relations; to impress a constructive trust; fraud; breach of fiduciary duty; rescission; and abuse of process. All of the causes of action are based on events leading up to appellant's purchase of the Mulholland property from the Williamses.

On August 7 appellant tendered the defense of the Klass action to Safeco. On or about September 22 Safeco agreed to provide a defense for appellant with counsel of his choice, subject to a reservation of Safeco's right to assert that it had no duty to defend appellant in the Klass action, and that it had the right to recover attorneys' fees paid by Safeco for appellant's defense. On December 13 Safeco filed the instant action against appellant seeking declaratory relief.

The issue presented is whether the Klass litigation is outside the coverage of the policy, or, if within the coverage, whether the policy exclusions relieve Safeco of any duty to defend. We conclude that Safeco had no duty to defend appellant in the Klass action for the reasons stated hereafter.

The relevant insuring clauses of the Safeco policy provide in pertinent part: "SUBJECT TO SCHEDULE B AND THE CONDITIONS AND STIPULATIONS HEREOF, SAFECO TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures the insured, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder,

sustained or incurred by said insured by reason of: ... [¶] 2. Any defect in or lien or encumbrance on such title; [¶] 3. Unmarketability of such title;..."

Safeco's duty to defend its insured is contained in paragraph 3(a) of the policy "Conditions and Stipulations" and provides: [¶] "The Company, at its own cost and without undue delay, shall provide for the defense of an insured in litigation to the extent that such litigation involves an alleged defect, lien, encumbrance or other matter insured against by this policy."

The exclusions from coverage are contained in "Schedule B" of the policy and provide in pertinent part: "This policy does not insure against loss or damage, nor against costs, attorneys' fees or expenses, any or all of which arise by reason of the following:...[¶] 9. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not shown by the public records and not otherwise excluded from coverage but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder;...; (d) attaching or created subsequent to Date of Policy; or..."

Appellant contends that the Klass causes of action for rescission of the contract of sale and to have appellant declared a constructive trustee of the property are adverse claims that amount to defects in appellant's title. Appellant contends further that the recording of a lis pendens by Klass and the Williamses rendered the title to the Mulholland property unmarketable.

The principles for determining the obligation of an insurer to its insured are set forth in *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, at pages 278-279 [142 Cal.Rptr. 681], hearing denied, as follows: "First, any ambiguities in the language of a policy are to be construed against the insurer (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]). This rule applies to ambiguities relating to the peril insured against, the amount of liability, and the persons protected (*id.,* at p. 269, fn. 3). Second, the duty to defend is broader than the obligation to indemnify. This results from the difficulty in

determining whether the third party suit falls within the indemnification coverage before the suit is resolved. To solve this problem, the courts have imposed a duty to defend whenever the insurer ascertains facts which give rise to the possibility or 'potential' of liability to indemnify (*id.*, at pp. 276-277). Therefore, before an insurer may rightfully reject a tender of defense, it must investigate and evaluate the facts expressed or implied in the third party complaint as well as those which it learns from its insured and any other sources (*id.*, at p. 276). Third, while the courts look to the provisions of the policy to determine the existence of a duty to defend, the fact that the contract is one of adhesion requires the court to ascertain the meaning of the contract 'which the insured would reasonably expect.' (*Id.*, at pp. 269-270.)"

■ The extent of the insurer's liability is determined by the coverage provisions of the policy. ■ The nature and kind of risk covered by the policy is a limitation on the duty to defend. (*Gray* v. *Zurich Insurance Co.* (1966) *supra*, 65 Cal.2d 263, 275.) ■ The rule that any ambiguity in an insurance contract will be resolved adversely to the insurer is not without limitation. Some actual or apparent ambiguity must be present before the rule comes into play. (*Wetzler* v. *State Farm Mut. Auto. Ins. Co.* (1966) 246 Cal.App.2d 472, 476 [54 Cal.Rptr. 756].)

■ Applying these principles to the present case compels the conclusion that Safeco had no duty to provide appellant's defense. The record discloses no facts existing on the date the Safeco policy became effective which constitute any defect in or lien or encumbrance on the title to the Mulholland property or render the title unmarketable, except those matters shown as exceptions in the policy. The facts alleged in the Klass action pertain to the conduct of appellant and Bea in their relations with the Williamses. The Klass action relates not to appellant's title in the property, but to the manner in which he acquired title. Under appellant's theory that the Klass action and lis pendens constitute a defect in the title and render the title unmarketable, a title company insuring a buyer of real property under a standard form title policy such as the Safeco policy,[2] notwithstanding an otherwise impeccable title, would have a potential liability to defend the insured in any third party action brought against the insured seeking rescission of the sale on any ground set forth in Civil Code section 1689, subdivision

---

[2]The Safeco policy is a California Land Title Association standard coverage policy.

(b),[3] or seeking to impress a constructive trust on the real property for the benefit of another, unless eliminated from coverage by the exclusionary clause. No reasonable construction of the policy could yield that result, nor could the insured reasonably expect the insurer to provide a defense under those circumstances.

The allegations in the Klass complaint allege intentionally tortious conduct by appellant, not a defect in his title. There is not a suggestion in the record or the briefs of any matter constituting a defect in or lien or encumbrance on the record title to the Mulholland property, except as disclosed in the policy. Nor is there any suggestion of any off-record risk in the chain of title coming within the policy coverage, such as a forged, altered or improperly delivered deed, incompetency, incapacity, marital rights, or irregularities in any probate proceeding. As to unmarketability of appellant's title, there is nothing in the record that indicates that the title was in any way unmarketable on the effective date of the policy. Any effect the recording of the Klass lis pendens had on the marketability of the title occurred after the effective date of the policy and is outside the policy coverage. ■ An insurance company may limit the coverage of a policy issued by it. When it has done so, the plain language of the limitation must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R. 914].) ■ Neither appellant's conduct leading up to the Klass action or the filing of the Klass action on July 25, 1978, can reasonably be construed as coming within the policy coverage.

■ Appellant contends that the exclusionary language of the policy is ambiguous. Since we hold that the insuring clauses of the Safeco policy do not require Safeco to provide a defense to the Klass action, it

---

[3]Civil Code section 1689, subdivision (b) provides: "A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. [¶] (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds. [¶] (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause. [¶] (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause. [¶] (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault. [¶] (6) If the public interest will be prejudiced by permitting the contract to stand. [¶] (7) Under the circumstances provided for in Sections 39, 1533, 1566, 1785, 1789, 1930 and 2314 of this code, Section 2470 of the Corporations Code, Sections 331, 338, 359, 447, 1904 and 2030 of the Insurance Code or any other statute providing for rescission."

is not necessary for Safeco to resort to the exclusionary provisions of the policy to avoid a duty to defend. Nevertheless, even if the policy were construed so as to include the Klass action within the insuring clauses, the exclusionary provisions would be applicable to deny appel‐ lant the right to a defense by Safeco. Appellant contends that that portion of the policy exclusions reading "Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant" is ambiguous. We agree. ■ But the consequence flowing from a finding of ambiguity is not eradication of the ambiguous statement, but the interpretation of it against the insurer. (*Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co., supra.*) ■ Respondents contend that the Klass action, including the alleged facts which gave rise to it, is an adverse claim "created" by appellant. Appellant contends that the Klass action is not an adverse claim created by appellant, but was created by Klass and the Williamses when they filed the action. Appellant confuses the assertion of the claim by means of the complaint with the creation of the basis for the claim by the conduct of appellant. The word "claim" is not limited to a formal lawsuit. (*Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261 [134 Cal.Rptr. 427].) Under appellant's interpretation there could be no adverse claim created by the insured because an adverse claim, appellant contends, means a legal action brought, and therefore created, not by the insured but a third party. Such an interpretation is unreasonable. (See, *Conway* v. *Title Ins. Co.* (1973) 291 Ala. 76 [277 So.2d 890]; *In re Wiltse Brothers Corporation* (6th Cir. 1966) 357 F.2d 190.)

With regard to the term "created" the court in *Hansen* v. *Western Title Ins. Co.* (1963) 220 Cal.App.2d 531, 535-536 [33 Cal.Rptr. 668, 98 A.L.R.2d 520], in interpreting a title policy, said, ". . . We believe the word 'created' means conscious, deliberate causation, and that if the word is also susceptible of the significance of bringing about a result inadvertently or negligently, we should accept the interpretation which is more favorable to the insured." In the instant case the interpretation most favorable to appellant is "conscious, deliberate causation" on the part of appellant. Appellant testified, and the trial court found, that appellant's conduct throughout the entire transaction was intentional and deliberate and not inadvertent or mistaken. Accordingly, the exclu‐ sionary provisions are applicable for the reason that appellant "created" the "adverse claim" against which he seeks to have Safeco defend him. Since the exclusion applies, there is no duty to defend. (*Walters* v. *Marler* (1978) 83 Cal.App. 3d 1, 29 [147 Cal.Rptr. 655], hg. den.;

*Stearns* v. *Title Ins. & Trust Co.* (1971) 18 Cal.App.3d 162, 167 [95 Cal.Rptr. 682].) Appellant's reliance on *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562 [83 Cal.Rptr. 394, 463 P.2d 746] is misplaced. In *Paramount Properties* the insurance company was obligated to defend the second action because the facts underlying the action indicated the company's potential liability. In the instant case there are no facts which give rise to any potential liability of Safeco.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.