87 F.3d 1322
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SCOTTSDALE INSURANCE COMPANY, an Arizona Corporation,
Plaintiff-Counter-Defendant-Appellant,
v.
WEISS ENGINEERING AND DEVELOPMENT, INC., a California
Corporation; Bernard Weiss,
Defendants-Counter-Claimants-Appellees.
 No. 93-55365.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1996.
Decided June 11, 1996.
 
 Before: CANBY, BOOCHEVER, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Scottsdale Insurance Company ("Scottsdale") sued Weiss Engineering and Development, Inc. and Bernard Weiss (collectively "Weiss"), seeking a declaration that claims asserted against Weiss and settled by Scottsdale were not covered under the terms of Weiss' liability insurance policy. Scottsdale sought reimbursement of the amount paid in settling those claims and all fees and costs incurred in defending Weiss. Weiss counterclaimed, asserting that Scottsdale had breached the contract of insurance and the implied covenant of good faith and fair dealing.
 
 
 3
 The claims initially asserted against Weiss and settled by Scottsdale concerned a group of condominium units built by Weiss. The buyers of ten of these units alleged that there were construction defects and that Weiss committed fraud while marketing the units. It is undisputed that Weiss' insurance policy did not insure Weiss against the claims of fraud.
 
 
 4
 Weiss tendered defense of all of the claims to Scottsdale. Scottsdale accepted the defense subject to a reservation of the right to seek a subsequent and separate determination that Scottsdale had no duty to indemnify or defend Weiss. During the months that followed, Scottsdale spent approximately $90,000 defending Weiss.
 
 
 5
 In June of 1990, Scottsdale received and rejected a settlement offer of $206,900 from the condominium owners. Scottsdale wanted Weiss to pay any settlement in excess of $35,000 because Scottsdale believed that "the vast majority of the claims ... made by these [condominium owners] [we]re ... not subject to coverage in the insurance policy contract."
 
 
 6
 In June of 1991, Weiss sent a letter demanding that Scottsdale make an offer to settle for policy limits. Scottsdale admitted that it understood the demand letter to mean that Weiss was requesting that a settlement offer be made and paid by Scottsdale without contribution from Weiss.
 
 
 7
 In August of 1991, Scottsdale received the report from Robert Johnson, an expert witness retained by defense counsel in the underlying action. Johnson had determined that the condominium units were not "luxury" units. He indicated that if counsel for the condominium owners were to depose him about this subject, he would testify that the units were not "luxury" condominiums as Weiss had represented while marketing the units. Defense counsel therefore decided to withdraw Johnson as an expert witness even though the trial was only a month away.
 
 
 8
 Without Johnson, the defense team no longer was able to refute the condominium owners' claim that correction of the defective construction would cost $700,000. Also, because the trial was only a month away, the defense team was unable to retain another expert witness. As a result, if the case had proceeded to trial, there would have been a significant risk of an adverse judgment in excess of the policy limits.
 
 
 9
 In September of 1991, Scottsdale settled the case for $250,000 without Weiss' approval and then filed this declaratory relief action. The district court granted summary judgment in favor of Weiss on Scottsdale's claims for reimbursement, finding that Scottsdale had not taken the steps necessary to preserve these claims. A jury eventually awarded Weiss $251,000 in damages on the counterclaims. The jury did not consider the issue of punitive damages, because the district court ruled Weiss did not make the prima facie showing necessary to justify such damages.
 
 
 10
 Scottsdale appeals the grant of summary judgment and the jury verdict on the implied covenant of good faith and fair dealing. Weiss appeals the denial of punitive damages. We affirm.
 
 DISCUSSION
 
 11
 A. The Right to Reimbursement of the Settlement Amount
 
 
 12
 Scottsdale argues that it had the right to seek reimbursement from Weiss for the amount expended in settlement. The district court rejected Scottsdale's argument and instead granted summary judgment in favor of Weiss.
 
 
 13
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. "We may affirm the district court's grant of summary judgment on any ground supported by the record." Sierra Club v. Babbitt, 65 F.3d 1502, 1507 (9th Cir.1995). "[T]he district court's interpretation of state law is reviewed de novo." Federal Ins. Co. v. Scarsella Bros., Inc., 931 F.2d 599, 602 (9th Cir.1991) (as amended).
 
 
 14
 California case law permits an insurer to act on behalf of an insured while reserving the right to deny coverage at a later time. See St. Paul Mercury Ins. Co. v. Ralee Eng'g Co., 804 F.2d 520, 522 (9th Cir.1986); Gray v. Zurich Ins. Co., 419 P.2d 168, 178 (Cal.1966). Thus, if having properly reserved its rights and having accepted a reasonable offer of settlement, an insurer subsequently established the noncoverage of its policy, it would be free to seek reimbursement of the settlement payment from its insured. See Johansen v. California State Auto. Ass'n Inter-Ins. Bureau, 538 P.2d 744, 750 (Cal.1975).
 
 
 15
 Whether an insurer properly reserved its right to seek reimbursement of a settlement amount depends on whether (1) the insurer entered into either an express or an implied-in-fact agreement with the insured which made it clear that the insurer intended to seek reimbursement of the settlement amount from the insured; (2) the insurer secured "specific authority" to make that settlement; or (3) the insurer notified the insured of a reasonable settlement offer and gave the insured an opportunity to assume the defense. Val's Painting & Drywall, Inc. v. Allstate Ins. Co., 126 Cal.Rptr. 267, 274 (Ct.App.1975).
 
 
 16
 (1) Agreement with the Insured
 
 
 17
 Scottsdale agreed to defend Weiss in a letter dated February 13, 1990. That letter, in pertinent part, stated that Scottsdale has, "under reservation of rights, undertaken your defense in this matter." The letter also stated that "[i]t is not the intent of this insurance policy to cover you for damages claimed based upon defective work or defective work products...." The letter, however, did not contain a specific reference to settlement or reimbursement.
 
 
 18
 Scottsdale's letter was insufficient to preserve its right to seek reimbursement from Weiss following settlement. Under California law, although a general reservation of rights at the commencement of the defense preserves the right to seek reimbursement of an amount paid on judgment, it is not sufficient to preserve the right to seek reimbursement of an amount paid in settlement. See id. at 273-74. Thus, Scottsdale could not base its claim for reimbursement on its reservation of rights letter.
 
 
 19
 (2) Specific Authority
 
 
 20
 Under California law, an insurance company can seek reimbursement from an insured following settlement if the insurance company obtained "specific authority" to settle. See Maryland Cas. Co. v. Imperial Contracting Co., 260 Cal.Rptr. 797, 804 (Ct.App.1989). In Maryland Casualty, the court found "specific authority" to settle where the insurer had previously obtained the trial court's permission to settle for an amount deemed reasonable and to contest coverage at a later date.
 
 
 21
 Scottsdale did not seek the trial court's permission to settle. Nevertheless, Scottsdale argues that it had "specific authority" to settle and seek reimbursement because Weiss sent a letter demanding that Scottsdale make a policy limits offer of settlement to the condominium owners. The demand letter, however, does not constitute sufficient evidence that Scottsdale had specific authority to settle and seek reimbursement from Weiss.
 
 
 22
 Although the demand letter acknowledged that Scottsdale had assumed the defense under a reservation of rights, the letter did not state that Weiss agreed to the insurance company's seeking reimbursement following settlement. See Val's Painting, 126 Cal.Rptr. at 273-744. Further, Scottsdale admitted that it understood the demand letter to mean that Weiss was requesting that a settlement offer be made and paid by Scottsdale without contribution from Weiss. Accordingly, the district court properly concluded that Scottsdale did not have "specific authority" to settle and seek-reimbursement from Weiss.
 
 
 23
 (3) Notice to Insured
 
 
 24
 Scottsdale did not notify Weiss of the settlement offer. Scottsdale also did not give Weiss an opportunity to assume the defense. Accordingly, Scottsdale did not reserve its right to seek reimbursement of the settlement under the third method set forth in Val's Painting.
 
 
 25
 B. The Implied Covenant of Good Faith and Fair Dealing
 
 
 26
 Scottsdale argues that the district court erred in permitting Weiss to proceed to trial on the claim that Scottsdale breached the implied covenant of good faith and fair dealing.[1] Scottsdale contends that Weiss could not succeed on that claim as a matter of law, because Scottsdale defended Weiss in the condominium owners' action and satisfied any duty to indemnify by paying $250,000 in settlement.
 
 
 27
 A jury verdict is reviewed to determine whether it is supported by substantial evidence. Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995) (as amended), cert. denied, 64 U.S.L.W. 3287 (U.S. May 28, 1996) (No. 95-563). Substantial evidence is relevant evidence which reasonable minds might accept as adequate to support a conclusion. Id.
 
 
 28
 An insurance company is not insulated from liability on a claim alleging breach of the implied covenant of good faith and fair dealing simply because the insurance company ultimately settles the underlying claim brought against the insured within policy limits. See, e.g., Larraburu Bros. Inc. v. Royal Indem. Co., 604 F.2d 1208, 1214-15 (9th Cir.1979) (noting that under California law a subsequent resolution of a matter within policy limits should not automatically exonerate an insurer for the consequences of an earlier failure to settle); Bodenhamer v. Superior Court, 238 Cal.Rptr. 177, 181 (Ct.App.1987) (same). Rather, the implied covenant of good faith and fair dealing precludes an insurer from doing anything which injures the right of the insured to receive the benefits of the agreement. Commercial Union Assurance Co. v. Safeway Stores, Inc., 610 P.2d 1038, 1041 (Cal.1980).
 
 
 29
 Scottsdale settled the claims brought against Weiss by the condominium owners. Scottsdale then sued Weiss to recover the amount expended in the settlement. It was clear, however, that Scottsdale had not taken the steps necessary under California law to maintain its suit against Weiss. See supra. Scottsdale's decision to sue Weiss therefore is evidence that supports the jury's finding that Scottsdale breached the implied covenant of good faith and fair dealing.
 
 
 30
 Further, Scottsdale initially refused to settle the claims brought by the condominium owners unless Weiss agreed to pay any settlement in excess of $35,000. Scottsdale believed "the vast majority of the claims ... made by these [condominium owners] [we]re ... not subject to coverage in the insurance policy contract." Under California law, however, "a belief that the policy does not provide coverage[ ] should not affect a decision as to whether the settlement offer in question is a reasonable one." Johansen, 538 P.2d at 749. See also Crisci v. Security Ins. Co., 426 P.2d 173, 177 (Cal.1967) ("Liability is imposed not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing."). Thus, Scottsdale's decision to consider whether the policy provided coverage when evaluating the settlement offer also is evidence that supports the jury's finding that Scottsdale breached the implied covenant of good faith and fair dealing.
 
 
 31
 We note also that a month before trial in the underlying action, Robert Johnson, the expert witness retained by Weiss' defense counsel, indicated that if opposing counsel were to depose him, he would testify that the condominiums were not "luxury" units. Defense counsel withdrew Johnson as an expert witness and did not secure another expert witness to testify. Without Johnson or another expert, the defense team could not refute the condominium owners' claim that correction of the defective construction would cost $700,000. As a result, if the case proceeded to trial, there would have been a significant risk of an adverse judgment in excess of policy limits.
 
 
 32
 Defense counsel's failure to secure an expert witness was not only detrimental to Weiss' chances of success against the condominium owners. It also was, at the very least, serendipitous for Scottsdale. The inability to argue that the condominiums were "luxury" units supported Scottsdale's contention that Weiss committed fraud by marketing the condominiums as "luxury" units. This, in turn, undermined Weiss' claim of coverage under the policy, which did not insure Weiss against claims of fraud.
 
 
 33
 Because defense counsel's failure to secure an expert witness exposed Weiss to a significant risk of an adverse judgment in excess of the policy limits, and at the same time undermined Weiss' claim of coverage under the policy, defense counsel's failure to secure an expert witness is evidence which would tend to support the jury's finding that Scottsdale breached the implied covenant of good faith and fair dealing.
 
 
 34
 We recognize that we have been discussing defense counsel's handling of an expert witness in evaluating whether the insurer breached the implied covenant of good faith and fair dealing. Although conduct of defense counsel generally should not be attributed to the insurer because "[t]he attorney hired by the insurer to represent the insured is an independent contractor," see Travelers Ins. Co. v. Lesher, 231 Cal.Rptr. 791, 801 (Ct.App.1986), attribution is permissible where the insurer controls defense counsel. See id. In the present case, it was possible to infer that Scottsdale controlled defense counsel's handling of the expert witness, because Scottsdale was the only one to benefit from defense counsel's failure to secure an expert witness to testify concerning the amorphous term "luxury" as applied to the condominium units.
 
 
 35
 In any event, whether or not the insurer controlled defense counsel's failure to secure an expert witness, we find that there was substantial evidence to support the jury's finding that Scottsdale breached the implied covenant of good faith and fair dealing. See Leslie Salt Co. v. St. Paul Mercury Ins. Co., 637 F.2d 657, 660-61 (9th Cir.1981).
 
 C. Punitive Damages
 
 36
 Weiss argues that the district court erred in refusing to permit Weiss to recover punitive damages on the claim that Scottsdale breached the duty of good faith and fair dealing.
 
 
 37
 A jury may award punitive damages if the defendnat acted with fraud, oppression or malice. Cal.Civ.Code § 3294. In determining whether the evidence supports an instruction on punitive damages, the reviewing court applies the substantial evidence test. In re Basilio T., 5 Cal.Rptr.2d 450, 459 (Ct.App.1992) (as modified). Substantial evidence is relevant evidence which reasonable minds might accept as adequate to support a conclusion. Murray, 55 F.3d at 1452.
 
 
 38
 Weiss contends that Scottsdale committed fraud because it never intended to defend Weiss despite promises to do so. To support this contention, Weiss points to Scottsdale's early statement that it would not settle unless Weiss agreed to contribute to the settlement. Scottsdale's position with regard to settlement, however, is not evidence that Scottsdale did not intend to defend Weiss in the event no settlement was reached.
 
 
 39
 Scottsdale monitored the progress and status of the action against Weiss. Moreover, Scottsdale did not place any restrictions on the funding of the defense. In fact, Scottsdale spent more than $90,000 defending Weiss before settling the case. This effort by Scottsdale indicates that its promise to defend Weiss was not fraudulent.
 
 
 40
 Weiss also contends that Scottsdale committed fraud by settling for an excessive amount of money and by concealing its plan to seek reimbursement from Weiss. Under the terms of the insurance policy, however, Scottsdale could settle within policy limits without obtaining Weiss' consent. Further, although Scottsdale did not adequately preserve its right to seek reimbursement, there was no evidence that the effort to obtain reimbursement was done to vex, injure, annoy or harass Weiss. Accordingly, the district court did not err in refusing to permit Weiss to recover punitive damages.
 
 CONCLUSION
 
 41
 The district court did not err when it granted summary judgment to Weiss on Scottsdale's claim for reimbursement of the amount expended in settlement. Substantial evidence supported the jury's verdict that Scottsdale breached the implied duty of good faith and fair dealing, and the district court did not err when it ruled that Weiss had not made the prima facie showing necessary to justify punitive damages. Costs and attorneys' fees on appeal are awarded to Weiss, and the case is remanded to the district court to determine the amount of attorneys' fees on appeal.[2]
 
 
 42
 AFFIRMED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Scottsdale does not challenge the amount of damages awarded to Weiss
 
 
 [2]
 An insured is entitled to recover attorneys' fees incurred on appeal to obtain the benefits due under an insurance policy. See Morcos v. Board of Retirement, 800 P.2d 543 (Cal.1990); Brandt v. Superior Court, 693 P.2d 796 (Cal.1985). The award, however, should be only for services attributable to recovery of the amount due under the policy and not for services relating to the bad faith claim or its consequences. See Biundo v. Old Equity Life Ins. Co., 662 F.2d 1297, 1299 (9th Cir.1981); Leslie Salt Co., 637 F.2d at 662